UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVERLAST ROOFING, INC., <br><br> Plaintiff <br><br> v. <br><br> MATTHEW WILSON, et al., <br><br> Defendants. | CIVIL ACTION NO. 1:23-CV-00828 <br><br> (MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court are two motions to dismiss filed by Defendants Hixwood Metal LLC ("Hixwood") (Doc. 75) and Matthew Wilson ("Wilson") & Peak Quality Products LLC ("Peak") (collectively, "Wilson Defendants") (Doc. 77). Before the Court is also a motion to quash three third-party subpoenas, or in the alternative, for a Rule 26 protection order, filed by Plaintiff Everlast Roofing LLC, Inc. ("Everlast"). (Doc. 87; Doc. 98). For the following reasons, Hixwood's motion to dismiss is **DENIED** (Doc. 75) and Wilson Defendants' motion to dismiss is **DENIED** (Doc. 77). Everlast's motion to quash and for a Rule 26 protection order are **DENIED**. (Doc. 87; Doc. 98).

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The following factual summary is taken from the operative amended complaint. (Doc. 72). Wilson worked at Everlast from February 23, 2016, to March 7, 2023, as a Business Development Manager. (Doc. 72, ¶¶ 43, 56). In this role, Wilson sold product and solicited business in relation to Everlast's Roofing and Metals Divisions. (Doc. 72, ¶¶ 44, 45). To perform his job responsibilities, Wilson was granted access to Everlast's trade secrets. (Doc. 72, ¶¶ 46, 47). Everlast has trade secrets related to their product testing and customer

information. (Doc. 72, at 5, 8). In order to have access to these trade secrets, Everlast required Wilson to execute a restrictive covenant agreement ("RCA") with Everlast. (Doc. 72, ¶¶ 49-51). Therein, Wilson agreed not to disclose or use Everlast's trade secrets. (Doc. 72, ¶¶ 50-51). This case arises from Everlast's allegations that Wilson did just that.

First, in early 2020, Wilson formed Peak. (Doc. 72, ¶ 52). Through Peak, Wilson sought to buy product from Everlast distributors, use it in Everlast territories, and potentially solicit Everlast customers. (Doc. 72, ¶ 53). Accordingly, Everlast immediately notified Wilson that his actions violated the RCA. (Doc. 72, ¶ 53). Everlast requested that Wilson dissolve Peak and offered to pay the costs associated with the dissolution. (Doc. 72, ¶ 54). Wilson subsequently represented to Everlast that he dissolved Peak and Everlast reimbursed him for the purported costs of doing so. (Doc. 72, ¶ 55).

Wilson eventually left Everlast in 2023. (Doc. 72, ¶¶ 56-57). Shortly after, he began working at direct competitor Hixwood. (Doc. 72, ¶¶ 56-57). According to Everlast, "[i]n his role with Hixwood, Wilson competes directly with Everlast by, among other things, selling to Everlast customers and potential customers at least one of the same products that Everlast sells, and with which Wilson was familiar during his employment with Everlast through his work with the . . . Everlast Metals divisions." (Doc. 72, ¶ 58). Accordingly, Everlast asserts that Wilson again violated the RCA. (Doc. 72, ¶ 59).

In its amended complaint, Everlast alleges the following Counts: Count I Breach of Contract against Wilson; Count II Misappropriation of Trade Secrets under the Defend Trade Secrets Act against all Defendants; Count III Misappropriation of Trade Secrets under the Pennsylvania Uniform Trade Secrets Act against all Defendants; Count IV Tortious

Interference with Contract against Hixwood and Peak; and Unfair Competition against Hixwood and Peak. (Doc. 72). As relief, Everlast seeks a preliminary and permanent injunction against all Defendants from disseminating or using any of Everlast's trade secrets and violating or interfering with Wilson's obligations in the RCA, actual damages, damages for unjust enrichment, exemplary damages, and attorneys' fees and costs. (Doc. 72, at 22).

On January 24, 2024, Hixwood and Wilson Defendants each filed a motion to dismiss this action and a brief in support of their respective motions. (Doc. 75; Doc. 76; Doc. 77; Doc. 78). On February 7, 2024, Everlast filed a brief in opposition to each Hixwood and Peak's motions to dismiss. (Doc. 79; Doc. 80). On February 21, 2024, Hixwood and Wilson Defendants each filed a reply brief. (Doc. 81; Doc. 82).

On May 10, 2024, Everlast filed a letter with the Court regarding a discovery dispute with Defendants. (Doc. 87). Therein, Everlast asserts a motion to quash three third-party subpoenas issued by Wilson Defendants. (Doc. 87, at 1). Wilson Defendants and Hixwood each responded to Everlast's filing with a letter on May 20, 2024. (Doc. 89; Doc. 90). On May 22, the Court held a telephonic discovery conference to address the dispute. (Doc. 94). The parties were subsequently ordered to file briefs addressing the Everlast's motion to quash. (Doc. 95). The implicated third parties were directed that they do not need to respond to the subpoenas until the Court denies Everlast's motion to quash. (Doc. 97). On June 4, 2024, Everlast filed a brief in support of its motion to quash, therein also asserting an alternative motion for a Rule 26 protective order. (Doc. 98). Wilson Defendants filed a brief in opposition and a declaration in support of their brief in opposition on June 11, 2024. (Doc. 100; Doc. 101). Accordingly, each motion before the Court is ripe for the Court's review.

3

**II.     LEGAL STANDARD**

   A.  MOTION TO DISMISS

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also

need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

B. DISCOVERY DISPUTE STANDARDS

### 1. The Scope of Discovery Under Rule 26

Rulings regarding the proper scope of discovery are matters consigned to the Court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally

defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

> Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

### 2. **Motion to Quash a Subpoena under Rule 45**

Federal Rule of Civil Procedure 45 governs subpoenas. A subpoena served in conjunction with discovery must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1). Rule 45(d)(3)(A) requires a court, upon motion, to quash or modify a subpoena that, among other things, "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A). The party moving to quash the subpoena "bears a 'heavy burden' of demonstrating that an enumerated basis for quashing the subpoena exists." *Malibu Media, LLC v. Doe*, No. 4:15-CV-2281, 2016 WL 524248, at *2 (M.D. Pa. Feb. 10, 2016).

"Generally speaking, a party does not have standing to quash a subpoena served on a third party." *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434 (E.D. Pa. 2001) (internal citations omitted); *see also Davis v. Gen. Accident Ins. Co. of Am.*, No. 98–4736, 1999 WL 228944, at *2 (E.D. Pa. Apr. 15, 1999) ("Ordinarily, only the non-parties whom were served with the subpoenas may move to have them quashed under Federal Rule of Civil Procedure
6

45([d])(3)(A)."). An exception to this rule exists, however, where "the party seeks to quash based on claims of privilege relating to the documents being sought." *Thomas*, 202 F.R.D. at 434; *First Sealord*, 918 F. Supp. 2d at 382 ("An exception to this rule permits a party to move to quash when it 'claims some personal right or privilege in respect to the subject matter of a subpoena . . . directed to a nonparty.'" (quoting *Davis*, 1999 WL 228944, at *2)).

### III. DISCUSSION

#### A. DEFENDANTS' MOTION TO DISMISS

Both Hixwood and the Wilson Defendants argue that Everlast's amended complaint should be dismissed because Everlast has failed to plead the requisite misappropriation element of its Product Testing and Customer Information Trade Secrets Act ("PUTSA") and the Defend Trade Secrets Act ("DTSA") claims.[1] (Doc. 76, at 11; Doc. 78, at 10). To plead a PUTSA claim, a plaintiff must allege "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." *Ecosave Automation, Inc. v. Delaware Valley Automation, LLC*, 540 F. Supp. 3d 491, 500 (E.D. Pa. 2021) (internal citations and quotations omitted). Similarly, to state a claim under DTSA, a plaintiff must show "(1) that they own a trade secret and (2) that the defendant misappropriated the trade secret." *Robson*

---

[1] Everlast states that it "will not oppose Defendants' motions to the extent that they seek dismissal of the claims asserted under the DTSA and the PUTSA relating to 'Product Testing Trade Secrets.'" (Doc. 79, at 6 n.2). Accordingly, because their dismissal is unopposed, the Court will **DISMISS** Everlast's DTSA and PUTSA claims as they related to Everlast's product testing trade secrets. The Court will cabin its discussion of these claims to include only Defendants' misappropriation of Everlast's customer information trade secrets.

7

*Forensic, Inc. v. Shinsky*, No. 5:22-CV-1309, 2022 WL 1198228, at *3 (E.D. Pa. Apr. 22, 2022), *appeal dismissed*, No. 22-1961, 2022 WL 17037664 (3d Cir. Sept. 12, 2022). When reviewing claims under both PUTSA and DTSA, courts apply the same analysis because the statutes are substantially similar and contain almost identical definitions of the terms trade secret and misappropriation. *Guthrie Clinic v. Convergence* CT, Inc., No. 4:23-cv-1396, 2023 WL 7287251, at *5 (M.D. Pa. Nov. 3, 2023).

Broadly, both statutes define a company's trade secrets to include "patterns, plans, compilations, formulas, methods, and processes." *W. Short Home, LLC v. Graeser*, 661 F. Supp. 3d 356, 372 (M.D. Pa. 2023) The parties here do not dispute that Everlast has sufficiently pled the trade secret element of their claims as they relate to Everlast's customer information trade secrets. Both the PUTSA and DTSA define misappropriation as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or the "disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5)(A); 12 Pa. C.S. §5302. Under this definition, the parties here disagree about whether Everlast has sufficiently alleged enough facts to support their allegation that Defendants misappropriated Everlast's customer information trade secrets. (Doc. 76, at 11; Doc. 78, at 10).

When asserting claim under PUTSA and DTSA, "a plaintiff need not make out specific allegations as to exactly how Defendants used or disclosed Plaintiff's trade secrets; there is no heightened pleading standard for a misappropriation claim, and Plaintiff is entitled to seek discovery to support [its] allegations setting forth a prima facie claim." *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 356 (D.N.J. 2019). Accordingly, a plaintiff need

not disclose with particularity how the trade secret was improperly disclosed or used to sufficiently allege it was misappropriated. *See Graeser*, 661 F. Supp. 3d at 375. In fact, courts in this Circuit have recognized that a plaintiff "may have no way of knowing what trade secrets have been misappropriated," and how they have been misappropriated at the pleading stage of the litigation. *See PDC Machs. Inc. v. Nel Hydrogen A/S*, No. 17-5399, 2018 WL 3008531, at *3 (E.D. Pa. June 15, 2018); *see also Graeser*, 661 F. Supp. 3d at 375. Thus, plaintiffs are just tasked with persuading the Court that misappropriation was plausible. *Sucharski*, 2023 WL 7403539, at *8. "Trade secret owners must be given a fair opportunity to prove misappropriation, and the Court must be mindful that the owner does not have the benefit of discovery to provide direct evidence at this stage." *Ho-Ho-Kus, Inc. v. Sucharski*, No. 223CV01677BRMJSA, 2023 WL 7403539, at *8 (D.N.J. Nov. 9, 2023).

To show Defendants misappropriated Everlast's trade secrets, Everlast must allege that Defendants "used" its trade secrets without express or implied consent. 18 U.S.C. § 1839(5)(A); 12 Pa. C.S. §5302.

> In accordance with its ordinary meaning and within the context of the [relevant legislation], the "use" of a trade secret encompasses all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose, such as "assist[ing] or accelerat[ing] research or development."
>
> *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 910 (3d Cir. 2021) (quoting *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450-51 (5th Cir. 2007).

The amended complaint defines the relevant trade secret as follows: "Everlast maintains confidential and proprietary information and trade secrets including, but not limited to, customer contact information (such as the names, addresses, and phone numbers of customer

representatives and potential customer representatives), historical sales volumes, competitive pricing information, special discounting arrangements, profitability analyses for certain products, marketing plans, and business strategies[.]" (Doc. 72, ¶ 35). The amended complaint provides that Wilson obtained this information while employed at Everlast, retained this information after he left Everlast, and subsequently used this information in violation of the RCA. (Doc. 72, ¶¶ 59, 60). Specifically, Everlast alleges that Defendants improperly used Everlast's customer information "to increase sales," market their products towards Everlast's customers, solicit Everlast customers, and improperly compete with Everlast. (Doc. 72, ¶¶ 60, 61, 65 81, 88). While Everlast does not include specific facts such as which customers were solicited and by how much Defendants were able to increase their sales in its amended complaint, at this stage of the pleading it is not required to do so. *See Austar Int'l Ltd.*, 425 F. Supp. 3d at 356 ("a plaintiff need not make out specific allegations as to exactly how Defendants used or disclosed Plaintiff's trade secrets"). Accordingly, Everlast's "allegations are sufficient, *though barely so*, at this stage of the litigation to permit a reasonable and plausible inference" that Defendants wrongfully retained and used Everlast's customer information trade secrets during and after Wilson's employment with Everlast for their own benefit. (Doc. 72, ¶¶ 61, 66, 67, 84, 87, 88); *Elite Transit Sols., LLC v. Cunningham*, No. CV 20-1549, 2021 WL 6286384, at *19 (W.D. Pa. Dec. 6, 2021), *report and recommendation adopted sub nom. Elite Transit Sols., LLC. v. Cunningham*, No. CV 20-1549, 2022 WL 783426 (W.D. Pa. Mar. 15, 2022) (emphasis added); *see also Thru Tubing Sols., Inc. v. Robbins*, No. 4:23-CV-

01476, 2023 WL 8549131, at *7 (M.D. Pa. Dec. 11, 2023). The Court is therefore compelled to **DENY** Hixwood and Wilson Defendants' motions to dismiss.[2] (Doc. 75; Doc. 77).

B. MOTION TO QUASH

Everlast argues that the third-party subpoenas issued to (1) Hurricane Engineering & Testing, Inc.; (2) Intertek; and (3) Farabaugh Engineering and Testing, Inc. should be quashed because they seek information about Everlast's product testing trade secrets which is "protectable" and no longer relevant to this action. (Doc. 87, at 1, 5). Wilson Defendants aver that this Court lacks jurisdiction and standing to hear this dispute. (Doc. 89, at 1). Further, that Everlast's arguments fail on the merits. (Doc. 89, at 1). Hixwood joins in these arguments. (Doc. 90, at 1). In response to Defendants' jurisdiction argument, Everlast asserts that Defendants ignore the "separate language in Rule 26(c)(1), which provides, in relevant

---

[2] The Court acknowledges Defendants' citations to *Herley Industries., Inc. v. R Cubed Eng'g, LLC* and *Diversified Industries, Inc. v. Vinyl Trends, Inc.*, for the proposition that misappropriation under the PUTSA and DTSA must be supported by more detailed factual allegations than included by Everlast in its amended complaint. (Doc. 81, at 6-8; Doc. 82, at 6-8); No. 5:20-CV-02888, 2021 WL 229322 (E.D. Pa. Jan. 22, 2021) (dismissing PUTSA and DTSA claims because plaintiffs did not support their allegation that defendants improperly used and thus misappropriated trade secrets with specific facts); No. CIV.A. 13-6194 JBS, 2014 WL 1767471, at *8 (D.N.J. May 1, 2014) ("defendant fails to state a claim for misappropriation of trade secrets. . . because Defendant fails to identify with any specificity the allegedly misappropriated information, the manner in which it was obtained, or how Defendant was harmed as a result."). The Court also agrees with Defendants that the majority of the cases cited by Everlast to support the sufficiency of their its do include more facts to support the challenged claims. (Doc. 81, at 9-10; Doc. 82, at 9-10); *See e.g.*, *Oakwood*, 999 F.3d at 910. However, at this stage of the litigation, Everlast is tasked only with alleging Defendants used Everlast trade secrets for some benefit, such as an economic benefit. *Oakwood*, 999 F.3d at 910. Everlast alleges that Defendants used Everlast's customer information trade secrets to increase sales, solicit clients, and unlawfully compete. (Doc. 72, ¶¶ 60, 61, 84, 87, 88). Thus, even though Everlast's factual allegations are admittedly sparse, it has met its burden.

11

part, that '[a] party or any person from whom discovery is sought may move for a protective order *in the court where the action is pending*. . .' Fed. R. Civ. P. 26(c)(1) (emphasis added)." (Doc. 98, at 17). However, as Wilson Defendants point out, Everlast did not initially file a Rule 26 motion for a protection order, but only a motion to quash.[3] (Doc. 87; Doc. 100, at 7). Accordingly, the Court will focus its review on Everlast's motion to quash.

Rule 45(d)(3) provides that "the court for the district where compliance is required" may adjudicate a motion to quash a subpoena. Fed. R. Civ. P. 45(d)(3). When a subpoena requires compliance in a different district than where the underlying litigation is pending, only the compliance district is empowered to adjudicate a motion to quash that subpoena. *See* Fed. R. Civ. P. 45(d)(3). The compliance district typically must be "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P.

---

[3] Considering briefly Everlast's request for a Rule 26 protective order, which was newly asserted in its briefing, the Court concludes this motion is properly **DENIED** on the merits. (Doc. 87; Doc. 98). Everlast argues that the challenged subpoenas seek information that is irrelevant to the remaining claims in this case and protectable because it is related to Everlast's product testing trade secrets. (Doc. 87, at 5; Doc. 98, at 16). *Supra*, this Court dismissed Everlast's DTSA and PUTSA claims as they relate to Everlast's product testing trade secrets without opposition. However, even without these claims, information implicating Everlast's product testing trade secrets remains relevant to Everlast's remaining breach of contract and tortious interference claims. (Doc. 72, ¶¶ 21-26, 81-99, 100-04; Doc. 100, at 9). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). This liberal discovery policy favors disclosure. Further, this Court has already granted the parties' motion for a Stipulated Protective Order intended to protect "highly confidential" material such as Everlast's trade secrets from disclosure in this case. (Doc. 41). Thus, Everlast's "personal interest" in "protecting its trade secrets from falling into the hands of its competitors," has already been addressed by this Court. (Doc. 41; Doc. 98, at 16-17; Doc. 100, at 7-8, 11-12). Accordingly, any motion for a protective order relating to these subpoenas is **DENIED**.

45(c)(2)(A). However, courts differ on how they define the phrase "district where compliance is required." *Takeda Pharm. Co. Ltd. v. Caremark RX, LLC*, No. CV 23-MC-111, 2023 WL 6201363, at *1 (E.D. Pa. Sept. 22, 2023). Some define the place of compliance as the "location identified on the subpoena," while others determine it is "dependent on where the recipient resides or works." *Takeda*, 2023 WL 6201363, at *1.

Here, on the relevant subpoenas the compliance districts are defined using the business addresses of each of the third parties and the Fox Rothschild office which is closest to them, as that is the location where the documents are to be produced. (Doc. 87-1, Doc. 87-2; Doc. 87-3). Accordingly, the subpoenas at issue now before the Court require compliance as follows:

- Hurricane Engineering & Testing, Inc. (Doc. 87-1, at 2). The place for compliance designated in the Hurricane Subpoena is Fox Rothschild LLP, 2 Biscayne Blvd Suite 2750, Miami, FL 33131.

- Intertek. (Doc. 87-2, at 2). The place for compliance designated in the Intertek Subpoena is Fox Rothschild LLP, 2000 Market Street, Philadelphia, PA 19103.

- Farabaugh Engineering and Testing, Inc. (Doc. 87-3, at 2). The place for compliance designated in the Farabaugh Subpoena is Fox Rothschild LLP, BNY Mellon Center, 500 Grant St #3500, Pittsburgh, PA 15219.

(Doc. 100, at 12).

None of the aforementioned subpoenas require compliance in the Middle District of Pennsylvania. Seemingly in accordance with Rule 45's mandate that motions to quash a subpoena are to be filed in "the court for the district where compliance is required," Everlast has filed duplicative motions to quash the challenged third-party subpoenas in each compliance district. (Doc. 99; Doc. 100, at 14); Fed. R. Civ. P. 45(d)(3); *see also Rardon v. Falcon Safety Prod., Inc.*, No. 23-1594, 2023 WL 5347298, at *3 n.4 (3d Cir. Aug. 21, 2023)

13

("The United States District Court for the Eastern District of Pennsylvania had jurisdiction over the motions to quash the subpoenas pursuant to Federal Rule of Civil Procedure 45 because compliance with the subpoena was required at CRC's principal place of business in Horsham, Pennsylvania. Fed. R. Civ. P. 45(d)(3)") (not precedential). Accordingly, this Court finds it lacks jurisdiction to decide this dispute. Fed. R. Civ. P. 45(d)(3); *see also Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014) ("[W]hen a motion to quash a subpoena is filed in a court other than the court where compliance is required, that court lacks jurisdiction to resolve the motion.") (citation omitted); *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 6:16-CV- 366-PGB-LHP, 2022 WL 1239237, at *1 (M.D. Fla. Feb. 16, 2022) ("[T]he Middle District of Florida is not the district where compliance is required, and the motion [to quash] is thus not properly before this Court.") (citations omitted); *see also Takeda Pharm.*, 2023 WL 6201363, at *2 ("Rule 45(a)(1)(A)(iii) permits the subpoena to direct a place of compliance," so long as that place is properly selected under Rule 45(c)); *Orthobond Corp. v. Burel*, No. CV 22-217 (RK) (RLS), 2023 WL 3867245, at *4 (D.N.J. June 7, 2023) ("As an initial matter, the Court finds the Motion to Quash is not properly before this Court. The district court where compliance is required maintains jurisdiction over applications to quash or modify a subpoena."); *cf. Jackson v. Aragon Advert., LLC*, No. 4:23-MC-00812, 2023 WL 7413332, at *2 n.4 (M.D. Pa. Nov. 9, 2023) ("Jackson filed his Motion in S.D.N.Y. because, while the underlying suit is pending before this Court, Federal Rule of Civil Procedure 45 requires that a motion to compel be made in the court for the district where compliance is required."). Everlast's motion to quash each third part subpoena should be adjudicated in their defined compliance districts; the Southern

District of Florida, the Eastern District of Pennsylvania, and the Western District of Pennsylvania. Because Everlast has already filed motions to quash in these districts, the Court will not further opine on the merits of Everlast's motion or the relevancy of the information sought by the subpoenas. Everlast's motion is **DENIED**. (Doc. 87).

IV. CONCLUSION

Based on the forgoing, Hixwood and Wilson Defendants' motions to dismiss are **DENIED**. (Doc. 75; Doc. 77). Everlast's motion to quash is **DENIED** for lack of jurisdiction. (Doc. 87). Everlast's motion for a Rule 26 protection order, to the extent that it asserts one, is **DENIED**. (Doc. 98).

An appropriate Order follows.

Dated: July 15, 2024            BY THE COURT:

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**